**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

THE PHOENIX OF ALBANY, LLC,

Plaintiff,

1:23-cv-311
(ECC/PJE)

v.

THE COUNTY OF ALBANY and JEFFREY NEAL, *as director of Albany County Division of Finance*,

Defendants.

---

Alexander E. Eisemann, Esq., *for Plaintiff*
Peter-Daniel Apostol, Esq., *for Defendants*

**Hon. Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

On March 8, 2023, Plaintiff The Phoenix of Albany, LLC initiated this action pursuant to 42 U.S.C. § 1983 alleging that Defendants the County of Albany and Jeffrey Neal, the Director of the Albany County Division of Finance, violated its rights under the Fourteenth Amendment of the United States Constitution. Complaint (Compl.), Dkt. No. 1. Presently before the Court is Plaintiff's motion to amend the complaint. *See* Dkt. No. 59. Also before the Court is Defendants' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure as to the Fourteenth Amendment due process claim articulated in the current operative pleading, the original complaint (*see* Compl.) and for sanctions, *see* Dkt. No. 67. The motions are fully briefed. Dkt. Nos. 59, 62, 67, 85. For the following reasons, Plaintiff's motion to amend the complaint is denied, and Defendants' cross-motion for judgment on the pleadings and for sanctions is denied.

## I. BACKGROUND[1]

This litigation involves two separate parcels of land located at 143 and 146 Montgomery Street and Centre Street in Albany, New York (the property). Compl. ¶ 9. Plaintiff "acquired title to" the property from Sunmark Federal Credit Union on August 15, 2017.[2] *Id.* at ¶¶ 9, 11. Five years earlier, the County of Albany (the County) had "commenced a tax foreclosure proceeding" against the property, *id.* at ¶ 13, and in October 2015, the County filed a petition of foreclosure against the property, *id.* at ¶ 14. However, in October 2017, while Plaintiff was the "record owner" of the property, the County withdrew the petition. *Id.* at ¶¶ 15, 16.

On approximately March 1, 2022, Plaintiff "discovered" that Defendants had "obtained a final judgment by default" against the property. Compl. ¶¶ 17, 59. In December 2022, the County sold the property. *See* Dkt. No. 9-1.

## II. MOTION TO AMEND

Plaintiff moves to file a proposed amended complaint adding new claims, additional defendants, and a plaintiff. *See generally* Proposed Amended Complaint (Am. Compl.), Dkt. No. 60-1. Specifically, Plaintiff seeks to add a named plaintiff, Evan Blum, and the following defendants: (1) Daniel McCoy, County Executive of Albany County, New York, in his official and individual capacities, (2) Kathy M. Sheehan, Mayor of the City of Albany, in her official and individual capacities, (3) Richard LaJoy, Director of the Department of Buildings and Regulatory Compliance for the City of Albany, New York, (4) Jeffrey Buell, and (5) Joseph Nicolla

---

[1] These facts are drawn from the Complaint, Dkt. No. 1. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of N.Y.*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions asserted therein, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] These facts are from the April 25, 2025 Memorandum-Decision and Order, Dkt. No. 39.

(collectively the proposed individual defendants); (6) Advance Albany County Alliance Local Development Corporation (Albany Alliance), (7) the City of Albany, New York (the City), (8) Redburn Development Partners, LLC (Redburn), (9) JRN Development, LLC (JRN Development), (10) CW Skyway, LLC (CW Skyway), and (11) fifty unnamed defendants, John Does 1-25 and Jane Does 1-25.

Plaintiff also seeks to add the following new claims: (1) a substantive RICO violation, 18 U.S.C. § 1962(c), against the proposed individual defendants and Neal (first claim), (2) RICO conspiracy, 18 U.S.C. § 1962(d), against "the Defendants" (second claim), (3) municipal liability, 42 U.S.C. § 1983, where the claim does not specify the relevant defendants (third claim), and (4) three New York state law claims, all of which appear to be against "the Defendants": trespass to chattels (fifth claim), unjust enrichment (sixth claim), and civil conspiracy (seventh claim). *See generally* Dkt. No. 59; Dkt. No. 60-1. Plaintiff also continues to plead the original claim under 42 U.S.C. § 1983 alleging a violation of the Fourteenth Amendment Due Process Clause (fourth claim of proposed amended complaint). *See id.*

Defendants argue that the motion to amend the complaint should be denied because it (1) is untimely, prejudicial, and futile; (2) does not meet the heighted pleading requirements of Fed. R. Civ. P. 9(b); (3) fails to satisfy Fed. R. Civ. P. 12(b)(6); and (4) provides no reasonable basis for any bad faith allegations. Dkt. No. 67-4 at 9–11. Defendants also argue that issue preclusion prevents the amendment. *Id.* Plaintiff responds that there is no prejudice from undue delay or if the Court accepts the proposed amended complaint, issue preclusion does not bar any proposed amendment, and that the proposed amended complaint is not futile because "[e]ven using Defendants' preferred framing, the prejudice they identify supposedly arose from a delay of less

than two months after the date Plaintiff could have moved for leave to amend . . . ." Dkt. No. 85 at 15.

For the reasons articulated below, the Court concludes that the proposed amendment would be futile and therefore does not reach the other arguments.

### A. Proposed Amended Complaint[3]

"Elected and appointed officials in Albany County and City government (the 'Albany Crew') unlawfully manipulated the machinery of local government to steal" the property "for the initial benefit of other members of a Racketeering Enterprise who made large political campaign contribut[ions] to them (the 'Contributors')." Am. Compl. ¶ 1. In addition, two Contributors received the property "through a bid-rigging scheme orchestrated by the Albany Crew, after it corruptly manipulated the levers of local government to steal it from Plaintiffs." *Id.* at ¶ 2. Another Contributor received a contract to demolish the building on the property "through another bid-rigging scheme orchestrated by the Albany Crew with the assistance of State of New York officials," and the "Albany Crew bypassed the well-qualified low bidder." *Id.*

Plaintiffs were unaware of any tax foreclosure proceedings predating their ownership because "the Albany Crew had deliberately chosen not to record the judgment of foreclosure." Am. Compl. ¶ 44. In October 2017, at the direction of McCoy and Neal, the foreclosure petition was withdrawn. *Id.* Plaintiffs assert that after the petition was withdrawn, Buell and Nicolla engaged in conversations with the "Albany Crew" to have Nicolla's company, Columbia, acquire the property for a nominal sum. *Id.* at ¶ 46. Then, at the direction of McCoy, foreclosure proceedings commenced again with no notice to Plaintiff. *Id.* at ¶¶ 47–58. Plaintiffs allege that

[3] These facts are drawn from the proposed amended complaint, Dkt. No. 60-1. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Eddi v. Antebi*, No. 24-cv-520, 2025 WL 3700586, at *4 (S.D.N.Y. Jun. 2, 2025).

the County and Neal (the original defendants) did not comply with the requirements articulated in Article 11 of the Real Property Tax Law—by not filing a new petition for foreclosure, not publishing and serving a notice, and not providing a redemption period—and this was done to intentionally deprive Plaintiffs of their interest in the property without due process. *Id.* at ¶¶ 58–82.

On July 29, 2022, the Enterprise, led by Sheehan, "concocted a supposed emergency" involving the property, which allowed partial demolition of parts of the building "with the goal of running up a large and inflated bill that they expected Plaintiffs would not pay, all toward the overall goal of generating an inflated bill for approximately $250,000 for only a few days of unnecessary work," in furtherance of the "goal of corruptly taking" the property from Plaintiffs. Am. Compl. ¶ 175. The Albany Crew, at Sheehan's direction with assistance from LaJoy, "commissioned a fraudulent engineering report that falsely asserted that the Building was unsafe because of falling debris," *id.* at ¶ 176. Based on that report, Sheehan "issued a state-of-emergency order that falsely stated falling debris was creating a risk for trains traveling over the Amtrak rail line adjacent to the Building." *Id.* at ¶ 177. In addition, the Albany Crew never gave Blum, the sole member of Phoenix, the opportunity to address the issues. *Id.* at ¶ 179. Moreover, a January 2020 building inspection for Plaintiffs declared that the building was safe. *Id.* at ¶ 180. A copy of the 2022 report was not provided to Plaintiffs. *Id.* at ¶ 181.

On December 22, 2022, the property was sold to CM Skyway for $50,000, when it was appraised for $900,000. Am. Compl. ¶ 188. On the same day, New York State awarded a $9.75 million grant to the County to rehabilitate the building on the property. *Id.* at ¶ 189. By January 2024, CW Skyway abandoned the project and returned the grant. *Id.* at ¶ 192. The grant and

property were returned so the property could be sold to CW Skyway after the building had been demolished. *Id.* at ¶ 195.

On February 1, 2025, CW Skyway sold its interest in the property to the Albany Alliance, a not-for-profit local development corporation, even though lower responsible bids existed. Am. Compl. ¶¶ 196, 208–17. "[T]he Albany Crew, acting through . . . McCoy, awarded" a contract to demolish the building on the property to Gramercy + LiRo, and the leaders of that company and related companies had donated $76,500 to Governor Hochul's campaign since she took office in 2021. *Id.* at ¶¶ 201–17.

Regarding campaign contributions, between 2010 and 2025, Buell, Nicolla, Reburn, and Columbia, "and their relatives and related entities" contributed over $100,000 to the Governor's and the "Albany Crew's" political campaigns. Am. Compl. ¶¶ 106–174. Plaintiff alleges that contributions to the Governor's campaign were intended to help ensure that the County would receive the $9.75 million grant awarded in December 2022. *Id.* at ¶ 191.

**B. Legal Standard**

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend "shall be freely given when justice so requires." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (internal quotation omitted). Under Rule 15(a), with exceptions not relevant here, a party may amend its pleading only with the opposing party's written consent or the court's leave. *See* Fed. R. Civ. P. 15(a)(1)–(2). A court may, in its discretion, deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (citation omitted).

"A proposed amended complaint is futile when it fails to state a claim." *Bryant v. Silverman*, 284 F. Supp. 3d 458, 467 (S.D.N.Y. 2018). In other words, "[l]eave to amend may be

denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010). Furthermore, "an amendment to a complaint may be denied as futile if a defendant can show that there are no 'set of facts consistent with the allegations in the complaint' which would entitle plaintiff to relief." *Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 250 (S.D.N.Y. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007)).

"The opposing party must establish that granting leave to amend would be futile." *Eddi*, 2025 WL 3700586, at *4 (quoting *Blagman v. Apple, Inc.*, No. 12-cv-5453, 2014 WL 2106489, at *5 (S.D.N.Y. May 19, 2014)). "In assessing the futility of a proposed amended pleading, the factual allegations set forth in the proposed amended pleading are assumed to be true." *Id.* (quotation omitted).

### C. Discussion

#### 1. RICO Violation

The amended complaint alleges that the proposed individual defendants violated RICO. Am. Comp. ¶¶ 218–50. Defendants argue that amendment would be futile because, among other reasons, Plaintiff has not plausibly alleged continuity given that there are "no plausible allegations related to the threat of ongoing criminal activity;" the nature of the "alleged scheme does not 'impl[y] a threat of continued criminal activity;" and the "alleged schemes are inherently terminable" because the scheme ended when the County received the property. Dkt. No. 67-4 at 24–26. Plaintiff responds that "continuity is a fact-intensive inquiry," and the proposed amended complaint plausibly alleges "a series of related acts involving foreclosure manipulation, code-enforcement pressure, efforts to steer the property to favored developers, and connected procurement conduct" where these "alleged acts share a common purpose, common participants,

and a common victim." Dkt. No. 85 at 20 (citing Am. Compl. ¶¶ 1–8, 42–48, 175–217). For the following reasons, the Court agrees with Defendants.

"To establish a RICO claim, a plaintiff must show: '(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.'" *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (quoting *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001)). In addition, a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, SP.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Regarding a pattern of racketeering activity, "[t]he Supreme Court has interpreted that phrase to require both that the RICO predicates pose a threat of continuous criminal activity and that they be related to each other." *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). "RICO only requires a combination of two or more predicate acts." *Id.* (citing 18 U.S.C. § 1961(5)). In addition, "RICO targets conduct that 'amount[s] to or pose[s] a threat of continued criminal activity.' Such continuity can be closed-ended or open-ended." *Id.* at 60 (citing *H.J. Inc.*, 492 U.S. at 239).

"Criminal activity that occurred over a long period of time in the past has closed-ended continuity, regardless of whether it may extend into the future." *Id.* (citing *H.J. Inc.*, 492 U.S. at 242). "As such, closed-ended continuity is 'primarily a temporal concept,' and it requires that the predicate crimes extend 'over a substantial period of time.'" *Id.* (quoting *Spool*, 520 F.3d at 184 and *H.J. Inc.*, 492 U.S. at 242). In addition, the Second "Circuit generally requires that the crimes extend over at least two years." *Id.* (quoting *Spool*, 520 F.3d at 184). "Although closed-ended continuity is primarily a temporal concept, other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes

are also relevant in determining whether closed-ended continuity exists." *Cofacrèdit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999).

"On the other hand, criminal activity 'that by its nature projects into the future with a threat of repetition' possesses open-ended continuity, and that can be established in several ways." *Reich*, 858 F.3d at 60 (citing *H.J. Inc.*, 492 U.S. at 241). "Some crimes may by their very nature include a future threat, such as in a protection racket." *Id.* (citing *H.J. Inc.*, 492 U.S. at 242). In addition, "[w]hen the enterprise is primarily unlawful, the continuity of the enterprise itself projects criminal activity into the future." *Id.* (citing *Spool*, 520 F.3d at 185). "And similarly, criminal activity is continuous when 'the predicate acts were the regular way of operating that business,' even if the business itself is primarily lawful," *id.* (quoting *Cofacrèdit*, 187 F.3d at 243), or when "the nature of the predicate acts themselves implies a threat of continued criminal activity," *Cofacrèdit*, 187 F.3d at 243.

The amended complaint relies on two theories: (1) mail and wire fraud,[4] 18 U.S.C. §§ 1341, 1343, "by *inter alia*, electronically making and mailing false court filings, concocting purported emergency conditions to put economic pressure on plaintiffs to yield their ownership interests in the Property;" and (2) bribery, 18 U.S.C. §§ 666(a)(1)(B) & 2; N.Y. Penal Law §200.3, "by, *inter alia*, engaging in or condoning acts of bribery or *quid pro quo* arrangements to secure campaign contributions in exchange for selling property to other members of the Enterprise at far below market prices or awarding bid-rigged contracts at inflated prices." Am. Compl. ¶ 231.

[4] The Court sincerely doubts that the amended complaint satisfies the heightened pleading requirements for RICO claims premised on mail and wire fraud, *see, e.g.*, *Black v. Ganieva*, 619 F. Supp. 3d 309, 341–42 (S.D.N.Y. 2022) (explaining requirements); *Brookhaven Town Conservative Comm. v. Walsh*, 258 F. Supp. 3d 277, 285–88 (E.D.N.Y. 2017) (same).

The amended complaint does not sufficiently allege a closed-ended pattern. "[T]he relevant period . . . is the time during which RICO predicate activity occurred, not the time during which the underlying scheme operated or the underlying dispute took place." *Chester Park View LLC v. Schlesinger*, No. 23-cv-5432, 2024 WL 2785140, at *8 (S.D.N.Y. May 29, 2024) (quoting *Spool*, 520 F.3d at 184 and citing *Cofacrèdit*, 187 F.3d at 243 ("[T]he duration of a pattern of racketeering activity is measured by the RICO predicate acts the defendants commit.")).

At the outset, neither the amended complaint nor Plaintiff's briefing addresses when the RICO predicate activity began. Regarding the amended complaint, there is no date range with the allegation articulating the mail/wire fraud and bribery theories, Am. Compl. ¶ 231, and the conclusory allegation that the "[t]hese acts occurred over an extended period" is not sufficient. *Id.* at ¶ 238. Plaintiff's briefing also does not address the issue of when the pattern began, instead arguing that "[t]he FAC describes a series of related acts involving foreclosure manipulation, code-enforcement pressure, efforts to steer the property to favored developers, and connected procurement conduct." Dkt. No. 85 at 27–28 (quoting Am. Compl. ¶¶ 1–8, 42–48, 175–217).

Even assuming, however, that the predicate acts occurred over at least two years, "the mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004). "Although continuity is 'primarily a temporal concept, other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists.'" *Id.* (quoting *De Falco*, 244 F.3d at 321); *accord Cofacrèdit*, 187 F.3d at 242–44; *GICC Cap. Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463, 467–68 (2d Cir. 1995); *see also Schlaifer Nance & Co. v. Estate of Andy Warhol*,

119 F.3d 91, 97–98 ("[C]ourts must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO.").

Here, Plaintiff and Blum are the only identified victims, and Blum is the only member of Plaintiff. *See* Am. Comp. ¶¶ 21, 22. In addition, the object of the alleged bid-rigging scheme is taking one piece of property, *see, e.g.*, *id.* at ¶ 2 (describing a bid-rigging scheme "orchestrated by the Albany Crew, after it corruptly manipulated the levers of local government to steal it from Plaintiffs"); *id.* at ¶ 8 ("The Albany Crew thereby participated in a scheme to steal the Property from Plaintiffs and to give it to the Contributors."); *id.* at ¶ 257 ("Each Defendant knew about and agreed to facilitate the scheme with the intention of keeping exclusively for themselves, the right and opportunity to own and control the Property and the Building"). Although Plaintiff argues that the "alleged acts share a common purpose, common participants, and a common victim," *see* Dkt. No. 85 at 27, this conclusory allegation is not sufficient, and the amended complaint does not sufficiently plead "enough to establish closed-ended continuity." *Chester Park View LLC*, 2024 WL 2785140, at *10 (citing *Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 605–06 (2d Cir. 2019) (summary order) (twenty-nine month long scheme involving few victims and few perpetrators, with limited goal of defrauding the plaintiff, did not support finding of closed-ended continuity); *Pier Connection, Inc. v. Lakhani*, 907 F. Supp. 72, 78 (S.D.N.Y. 1995) (one scheme with single goal of seizing control of plaintiff's business, even though using several different tactics, did not support finding of closed-ended continuity); *see also One World LLC v. Onoufriaddis*, No. 21-374-cv, 2021 WL 4452070, at *2 (2d Cir. Sept. 29, 2021) (alleged scheme involving discrete number of predicate acts and single victim did not justify departing from two-year benchmark for closed-ended continuity). "Rather, the alleged scheme is 'more akin to garden variety breach of contract and tort claims than a large-scale civil RICO claim,' which does not

suffice for closed-end continuity." *Chester Park View LLC*, 2024 WL 2785140, at *10 (quoting *MinedMap, Inc. v. Northway Mining, LLC*, No. 21-1480-cv, 2022 WL 570082, at *2 (2d Cir. Feb. 25, 2022) and citing *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 135–36 (S.D.N.Y. 2023) (collecting cases)).

Regarding open-ended continuity, Plaintiff alleges only that there is an "ongoing organization," that Defendants committed actions that "occurred over an extended period and pose an ongoing threat of repetition" and "pose a continuing threat of future harm." Am. Compl. ¶¶ 229, 238, 239; *see also id.* at ¶ 243 ("The Enterprise is an ongoing organization that utilizes interstate commerce, including, among other means, use of the United States Postal Service, wire transfers of funds, transmission and receipt of emails and the various means and methods by which it provides government services."). These conclusory allegations are not sufficient to support a threat of repetition. *See Grace Int'l*, 797 F. App'x at 606 ("But [plaintiff's] speculative claims regarding how long the fraud would continue do not, on their own, support a showing of open-ended continuity.") (citing *GICC Cap. Corp.*, 67 F.3d at 466 (rejecting claim that defendant would have continued scheme had plaintiff not commenced litigation on the grounds it was "entirely speculative")).

In addition, Plaintiff has not alleged that either of the theories—bribery or mail/wire fraud—included any future threat of repetition or that bribery or mail/wire fraud were part of the "regular way of operating [their] business" for the County, the City, and the Albany Crew. *See Reich*, 858 F.3d at 60 (concluding that the phone calls supporting the wire fraud theory did not satisfy open-ended continuity where the phone calls "included no future threat of repetition, and false phone calls were not [the energy company Defendant's] regular way of operating [its] business.").

Plaintiff has also not alleged that the "businesses" here are primarily unlawful.[5] The amended complaint alleges that the County, the City, and the "Albany Crew" engaged in campaign contributions and improper influence, among other activities. *See* Am. Compl. ¶¶ 218–50. But even assuming that any Defendant paid bribes and that any Defendant accepted bribes, there are no allegations that any of the LLC Defendants are primarily in the bribe business or that the County or the City are primarily in the business of accepting bribes, obtaining property from people without notice, filing false court documents, making up emergencies to press property owners to give up their property interest, selling property below market prices, or awarding contracts through rigged bidding at inflated prices. *Reich*, 858 F.3d at 61 ("Even if Derwick pays bribes, it is primarily in the energy business; it is not a narcotics ring or an organized crime family.") (citing *United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir 1995) (noting that open-ended continuity does not exist when predicate acts are 'in furtherance of endeavors that are not inherently unlawful, such as frauds in the sale of property'); *United States v. Pizzonia*, 577 F.3d 455, 465 (2d Cir 2009) (holding, in the context of continuity, that 'long-term criminal associations plainly include those traditionally grouped under the phrase 'organized crime''")).

Given the absence of allegations to adequately plead continuity, any addition of a RICO claim to an amended complaint would be futile, and Plaintiff's motion to amend on this ground is denied.[6]

---

[5] As Plaintiff points out, RICO can apply to activities by "corrupt public or governmental entities." *United States v. Angelilli*, 660 F.2d 23, 33 (2d Cir. 1981); Dkt. No. 85 at 24.

[6] As the civil RICO allegation fails to adequately plead continuity, the Court need not analyze the other required elements of a RICO claim.

**2. RICO Conspiracy**

The amended complaint also alleges that Defendants conspired to commit RICO violations. Am. Compl. ¶¶ 251–61. Because Plaintiff fails to state a substantive claim under RICO, amendment of the complaint to include a civil RICO conspiracy claim would necessarily be futile. *See Reich*, 858 F.3d at 62 (explaining that where the substantive RICO claim was dismissed that the "RICO conspiracy claim fails for the same reasons") (citing *First Cap.*, 385 F.3d at 182). Plaintiff's motion to amend on this ground is therefore denied.

**3. Municipal Liability Under 42 U.S.C. § 1983**

The amended complaint alleges a *Monell* claim against all Defendants collectively and individually under 42 U.S.C. § 1983. *See* Am. Comp. ¶¶ 262–67. Defendants argue that the proposed *Monell* claim is time-barred and does not relate back to the operative pleading. *See* Dkt. No. 67-4 at 25–26. Plaintiff responds that the proposed amended complaint identifies a "pattern of conduct that constitutes a municipal custom or policy," and that there exists a "broader practice of using governmental processes to deprive individuals of property without due process. . . . [d]emonstrate[d] by constructive acquiescence by policymakers." Dkt. No. 85 at 29–30 (citing Am. Compl. ¶¶ 1–8, 25–29, 265–75).

It is well settled that "[a] municipality cannot be made liable [under § 1983] by application of the doctrine of *respondeat superior*." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (quotations omitted). Rather, "[i]n order to hold the County liable under § 1983, plaintiff must put forth sufficient evidence to show that individual defendants' unconstitutional actions were taken pursuant to an official municipal policy, custom, or practice." *Thornton v. Cnty. of Albany*, No. 14-cv-679 (DNH/CFH), 2016 WL 5793714, at *7 (N.D.N.Y. Oct. 4, 2016) (citing *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978)).

"A municipal policy or custom may be established where the facts show (1) a formal policy,

officially promulgated by the municipality, *Monell*, 436 U.S. at 690; (2) action taken by the official responsible for establishing policy with respect to a particular issue, *Pembaur v. Cincinnati*, 475 U.S. 469, 483–84 (1986); (3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127–30 (1988); or (4) a failure to train or supervise that amounts to 'deliberate indifference' to the rights of those with whom the municipality's employees interact, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)." *Rivas v. Onondaga Cnty.*, No. 19-cv-00844 (BKS/TWD), 2025 WL 2675826, at *16 (N.D.N.Y. Sept. 18, 2025) (internal citations omitted). "[T]o demonstrate *Monell* liability, a plaintiff must allege a violation of constitutional rights by employees of the municipality and (1) the existence of a municipal policy or custom that caused his injuries beyond merely employing the misbehaving officers; and (2) a causal connection – an affirmative link – between the policy and the deprivation of his constitutional rights." *Werkheiser v. Cnty. of Broome*, 655 F. Supp. 3d 88, 109 (N.D.N.Y. 2023) (cleaned up).

**a. Individual Liability**

The amended complaint asserts *Monell* claims against the following individual Defendants acting in both their individual and official capacities: McCoy, Neal, Sheehan, LaJoy, Buell, and Nicolla. Am. Compl. ¶¶ 25, 26, 28, 29, 31, 33, 262–67. "*Monell* does not apply to . . . individuals who are sued in their individual capacity." *Jackson v. Williams*, No. 18-cv-1137 (LEK/CFH), 2017 WL 1162196, at *3 (N.D.N.Y. Mar. 28, 2017) (quoting *Amory v. Katz*, No. 15-cv-1535, 2016 WL 7377091, at *5 (D. Conn. Dec. 19, 2016)); *see also Shook v. NYS Cent. Reg. of Child Abuse & Maltreatment*, No. 24-cv-1218 (AJB/PJE), 2025 WL 1718044, at *7 (N.D.N.Y. June 20, 2025) (collecting cases), *report and recommendation adopted*, 2025 WL 2753667 (N.D.N.Y. Sept. 29, 2025). The proposed *Monell* claim against McCoy, Neal, Sheehan, LaJoy, Buell, and Nicolla in their individual capacities is therefore futile.

**b. Official Capacity Claims Against Individuals**

The amended complaint asserts *Monell* claims against McCoy, Neal, Sheehan, LaJoy, Buell, and Nicolla in their official capacities, and those claims are duplicative of the *Monell* claim against the County and the City. An official-capacity claim is "in all respects other than name, to be treated as a suit against the entity.'" *Reynolds v. Vill. of Chittenango*, No. 19-cv-416 (GLS/ML), 2023 WL 6460417, at *6 (N.D.N.Y. Oct. 4, 2023) (quoting *Sheriff's Silver Star Ass'n of Oswego Cnty., Inc. v. Cnty. of Oswego*, 56 F. Supp. 2d 263, 265 n.3 (N.D.N.Y. 1999) (citation omitted)). That is why "courts routinely dismiss official capacity claims as redundant when the municipal entity is also a defendant to the same claims." *Id.* (citing *Sheriff's Silver Start Ass'n*, 56 F. Supp. 2d at 265 n.3 ("courts have dismissed official-capacity claims as unnecessary or redundant where similar claims are asserted against the entity") (citations omitted)); *see also Legette-Edwards v. City of Syracuse*, No. 06-cv-892 (NAM/DEP), 2007 WL 2891774, at *4 (N.D.N.Y. Sept. 27, 2007) ("With regard to the individual defendants, to the extent that they are being sued in their official capacities, the claims against them are duplicative of the *Monell* claim against the City.") (citing *Tsotesi v. Bd. of Educ.*, 258 F. Supp. 2d 336, 338 n.10 (S.D.N.Y. 2003) (additional citation omitted); *see also id.* (citing *Monell*, 436 U.S. at 691 (holding that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding that "an official capacity suit is, in all respects other than name, to be treated as a suit against the [municipal] entity. . . .")). Therefore, the proposed *Monell* claims against the individual Defendants in their official capacities are futile.

**c. Private Entities**

The amended complaint alleges a *Monell* claim against the following private entities: Albany Alliance, Redburn Development, JRN Development, and CW Skyway. Am. Compl. ¶¶ 21–34. A private entity may be "considered a municipal defendant for purposes of the *Monell*

pleading requirements" under some circumstances, such as when a "private entity . . . contracts to provide medical services to a municipality." *Porter v. Primecare Med. Inc.*, No. 25-cv-6185, 2026 WL 2295247, at * 2 (W.D.N.Y. Aug. 10, 2026) (quoting *James v. Monroe Cnty.*, No. 20-cv-7094, 2022 WL 17155831, at *11 (W.D.N.Y. Nov. 22, 2022) (collecting cases)). But "[l]ike municipal defendants, private employers are not liable under § 1983 for the constitutional torts of their employees, unless the plaintiff proves that 'action pursuant to official . . . *policy* of some nature caused a constitutional tort.'" *Porter*, 2026 WL 2295247, at *2 (quoting *Rojas v. Alexander's Dept. Stores, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) (emphasis in original) (in turn quoting *Monell*, 436 U.S. at 691)). In addition, "the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296 (2001)). "It is not enough, however, for a plaintiff to plead state involvement in '*some activity* of the institution alleged to have inflicted injury upon a plaintiff'; rather, the plaintiff must allege that the state was involved 'with the *activity that caused the injury*' giving rise to the action." *Id.* at 257–58 (emphasis in original) (quoting *Schlein v. Milford Hospital, Inc.*, 561 F.2d 427, 428 (2d Cir. 1977) (cleaned up)).

Here, the amended complaint does not allege that the state compelled or encouraged the private entities' alleged actions, or that those actions were entwined with state policies or part of a public function delegated to them by the state. *See* Am. Compl. ¶¶ 41–217; *see also Sybalski*, 546

F.3d at 257 (citing *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1296 (2d Cir. 1991) ("The question is not whether the decision to *establish* the [private entity] was state action, but rather whether the [private entity]'s decision to *sanction* [plaintiffs] may be fairly attributable to the [g]overnment.") (cleaned up)). Therefore, these claims are futile.

**d. The County and the City**

The amended complaint asserts a *Monell* claim against the County and the City. Those claims are also futile because they do not sufficiently allege a policy or a custom. "*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007). "A plaintiff bringing a § 1983 claim need not meet a 'heightened pleading requirement,' but he may not rely solely on 'naked assertion[s] devoid of further factual enhancement.'" *Wozar v. Campbell*, 763 F. Supp. 3d 179, 205 (D. Conn. 2025) (quoting *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), and *Iqbal*, 556 U.S. at 678). "'Boilerplate language echoing the requirements contained in *Monell* will not survive a motion to dismiss and [a p]laintiff must provide detailed factual allegations showing the existence of these alleged policies.'" *Id.* (quoting *Barnes v. City of New York*, No. 18-cv-7119, 2020 WL 6947424, at *7 (S.D.N.Y. Nov. 25, 2020), *aff'd in part, vacated in part, remanded*, 68 F.4th 123 (2d Cir. 2023) (cleaned up)). Therefore, "to show a formal policy at this stage in the litigation, a plaintiff must allege 'facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists.'" *Id.* (quoting *Montero v. Yonkers*, 890 F.3d 386, 403 (2d Cir. 2018) (citation omitted)). "'[E]xplicit factual allegations' must support any such inference." *Id.* (quoting *Fanelli v. Town of Harrison*, 46 F. Supp. 2d 254, 258 (S.D.N.Y. 1999)).

Plaintiff argues that the amended complaint "alleges policymaker participation and a broader pattern of using official processes to achieve the alleged deprivation." Dkt. No. 85 at 29 (citing Am. Compl. ¶¶ 1–8, 25-29, 265–75). Plaintiff also argues, without citing to any specific paragraphs in the amended complaint, that there are sufficient allegations of a "pattern of conduct that constitutes a municipal custom or policy," that "[t]he actions taken against the plaintiffs were not isolated incidents but part of a broader practice of using governmental processes to deprive individuals of property without due process," and that "[t]he involvement of high-level officials and the repeated nature of the conduct demonstrate constructive acquiescence by policymakers." *Id.* at 29–30.

Plaintiff cites to three groups of paragraphs in the amended complaint to support its argument that the *Monell* claim should not be dismissed. Specifically, Plaintiff cites to the introductory paragraphs of the amended complaint, Am. Compl. ¶¶ 1–8, the paragraphs identifying Defendants, *id.* at ¶¶ 25–29; and the following paragraphs in the *Monell* claim: (1) "Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States;" (2) "These practices were so persistent and widespread that they constituted the constructive acquiescence of policymakers. Further, as detailed herein, individual policymakers directly participated in and/or tacitly condoned the conduct to which Plaintiffs were subjected;" (3) "The foregoing customs, policies, usages, practices, procedures and rules of the County and City of Albany, New York, constituted deliberate indifference to the constitutional rights of Plaintiff;" and (4) "The foregoing of the customs, policies, usages, practices, procedures and rules of the County and City of Albany, New York,

were the moving force behind and the direct and proximate cause of the constitutional violations suffered by Plaintiffs."), Am. Compl. ¶¶ 265–75; *see also* Dkt. No. 85 at 29–30.

Such wholly conclusory allegations lacking any factual detail are not adequate. *D.J. by Comfort v. Corning-Painted Post Area School Dist.*, 722 F. Supp. 3d 148, 162 (W.D.N.Y. 2024) (citing *Vasquez v. New York*, No. 20-cv-4641, 2023 WL 8551715, at *5 (S.D.N.Y. Dec. 11, 2023) ("Similarly, courts dealing with *Monell* claims have disregarded the use of conclusory allegations that do not provide additional support that a plaintiff's experience is consistent with a larger pattern of similar conduct.") (quotations omitted)). "'The complaint is bereft of any detail about the nature of any suspect policies, practices, or procedures, much less how they caused' the violation of Plaintiff's rights." *LeClair v. Raymond*, No. 19-cv-28 (BKS/DJS), 2020 WL 5027278, at *13 (N.D.N.Y. Aug. 25, 2020) (quoting *Moore v. City of Norwalk*, No. 17-cv-695, 2018 WL 4568409, at *4 (D. Conn. Sept. 24, 2018)).

In addition, the allegations in the amended complaint contain no information demonstrating that any purported policy affected anyone other than the Plaintiff and proposed plaintiff. As a result, "Plaintiff has failed to plausibly allege that the conduct at issue was part of a persistent or widespread discriminatory practice or amounted to anything other than a single incident of alleged unconstitutional activity, which is insufficient under *Monell*." *D.J. by Comfort*, 722 F. Supp. 3d at 162 (citation omitted).

In sum, without more, Plaintiff's conclusory allegations cannot support any inference that a municipal policy or custom exists based on a widespread practice. *Montero*, 890 F.3d at 403. Accordingly, Plaintiff's motion to amend to add a *Monell* claim against the municipal Defendants is denied as futile.

### 4. New York State Law Claims: Trespass to Chattels, Unjust Enrichment, and Civil Conspiracy

Plaintiff also alleges three New York state law claims: trespass to chattels (fifth claim), unjust enrichment (sixth claim), and civil conspiracy (seventh claim). *See* Am. Compl. ¶¶ 276–91. Defendants argue that these claims are futile and fail to satisfy mandatory notice requirements. *See* Dkt. No. 67-4 at 15–16, 20.

#### a. Municipal Defendants

Plaintiff does not contest that the mandatory notice requirements apply to the state-law claims against the municipal defendants, but argues that they are "at most, merits challenges to the sufficiency of the amended pleading," and such arguments, which Defendants could raise after the amended complaint is accepted, "do not justify denying Plaintiff the opportunity to file the proposed amended complaint under the liberal amendment standard." Dkt. No. 85 at 30–31. These are, in fact, not merits challenges, but instead mandatory requirements upheld in New York's federal and state courts.

"[A]s a general rule, 'state notice-of-claim statutes apply to state-law claims' asserted as pendant claims in a federal action." *Singletary v. Allen*, 431 F. Supp. 3d 126, 129 (W.D.N.Y. 2019) (quoting *Yennard v. Herkimer BOCES*, 241 F. Supp. 3d 346, 366 n.10 (N.D.N.Y. 2017)) (internal quotation and citation omitted). "Pursuant to New York General Municipal Law § 50-e, a plaintiff who asserts a state law tort claim against a municipal entity or its employees for acts that occurred within the scope of their employment must file a notice of claim within ninety days after the incident giving rise to the claim." *Singletary*, 431 F. Supp. 3d at 129 (internal quotation and citation omitted). "'Notice of claim requirements are construed strictly by New York state courts. Failure to comply with these requirements ordinarily requires dismissal for failure to state

a cause of action.'" *Id.* (quoting *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793–94 (2d Cir. 1999)).

"In order to survive a motion to dismiss, a plaintiff 'must plead that: (1) a notice of claim was served; (2) at least thirty days elapsed since the notice of claim was filed and before the complaint was filed; and (3) in that time, the defendant neglected or refused to satisfy the claim.'" *Id.* at 130 (quoting *Coggins v. Cnty. of Nassau*, 988 F. Supp. 2d 231, 251 (E.D.N.Y. 2013)). "'The plaintiff bears the burden of demonstrating compliance with the notice of claim requirements.'" *Id.* (quoting *Chabot v. Cnty. of Rockland, N.Y.*, No. 18-cv-4109, 2019 WL 3338319, at *9 (S.D.N.Y. Jul. 25, 2019)).

Here, the amended complaint does not allege service of a notice of claim as required. In addition, Plaintiff does not make any such argument. Plaintiff's state law claims for trespass to chattels, unjust enrichment, and civil conspiracy as to the municipal Defendants are therefore futile. *See Rodriguez v. Shattuck*, No. 24-cv-778 (BKS/PJE), 2025 WL 1066524, at *5 n.6 (Feb. 6, 2025) ("'A timely-filed notice of claim is a prerequisite to a tort action against a municipality. The complaint must contain allegations that the notice of claim was filed at least thirty days prior and payment has not been made to satisfy the claim.'") (quoting *Parent v. New York*, 786 F. Supp. 2d 516, 529 (N.D.N.Y. 2011)), *appeal docketed*, No. 26-1424 (2d Cir. May 22, 2026).

**b. Non-Municipal Defendants**

Plaintiff's New York state claims as to the non-municipal Defendants are also insufficiently pled.

"Under New York Law, a trespass to chattel occurs when a party intentionally damages or interferes with the use of property belonging to another." *Sullivan v. Snider*, No. 19-cv-129 (GTS/DJS), 2021 WL 1294595, at *20 (N.D.N.Y. Apr. 7, 2021) (quoting *Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d 408, 416 (S.D.N.Y. 2018)) (cleaned up). "'Liability for

trespass to chattels will be imposed only if the interference results in harm to the physical condition, quality or value of the chattel or if the owner is deprived of use of the chattel for a substantial time.'" *Id.* (quoting *Jackie's Enter., Inc., v. Belleville*, 87 N.Y.S.3d 124, 131 (N.Y. App. Div., 3d Dep't 2018)). As a result, "'the elements of trespass to chattel are (1) intent, (2) physical interference with (3) possession, resulting in (4) harm.'" *Id.* (quoting *Fishckoff*, 339 F. Supp. 3d at 416) (cleaned up). "'Chattel' is defined as '[m]ovable or transferable property [such as] personal property.'" *Id.* at *21 (quoting *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 259 (S.D.N.Y. 2012)). On the other hand, "real property" is defined as "'[l]and and anything growing on, attached to, or erected on it, including anything that may be severed without injury to the land.'" *Id.* (quoting *Real property*, Black's Law Dictionary (10th ed. 2014)).

Here, the property falls squarely within the definition of "real property," as it is land and the building erected on it, located at 143 and 146 Montgomery Street and Centre Street in Albany, New York. *See* Am. Compl. ¶¶ 36, 37. Because trespass to chattels involves interference with personal property, and not real property, the proposed claim is therefore futile.

Regarding civil conspiracy, "'New York does not recognize civil conspiracy to commit a tort as an *independent* cause of action.'" *Puebla Palomo v. DeMaio*, 403 F. Supp. 3d 42, 61 n.18 (N.D.N.Y. 2019) (quoting *Great Lakes Motor Corp. v. Johnson*, 68 N.Y.S.3d 614, 617 (2017)). "Rather, 'allegations of conspiracy' serve 'only to connect the actions of separate defendants with an otherwise actionable tort.'" *Id.* (quoting *Abacus Fed. Sav. Bank v. Lim*, 905 N.Y.S.2d 585, 588 (2010)).

Here, Plaintiff has not successfully alleged an underlying tort claim, and therefore, as a matter of law, the civil conspiracy claim is not sufficiently alleged and is therefore futile. *See, e.g.*, *Gan v. GSUIG Real Estate Member LLC*, 797 F. Supp. 3d 69, 110 (E.D.N.Y. 2015) (citing

*Filler v. Hanvit Bank*, 156 F. App'x 413, 418 (2d Cir. 2005) ("A claim of conspiracy cannot stand alone and must be dismissed if the underlying independent tort has not been adequately pleaded.")). Accordingly, because no underlying tort has successfully been alleged, Plaintiff's motion to amend the complaint to include a civil conspiracy claim is denied.

Regarding unjust enrichment, "a plaintiff must establish: (1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendant[ ] to make restitution.'" *Marini v. Adamo*, 12 F. Supp. 3d 549, 552 (E.D.N.Y. 2014) (quoting *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 471 (E.D.N.Y. 2013)). New York courts require proof that the accused party "received a 'specific and direct benefit' from the property sought to be recovered, not an 'indirect benefit.'" *Id.* (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)). "The direct-indirect distinction is consistent with a separate line of unjust enrichment cases in New York holding that a plaintiff's relationship with the defendant cannot be 'too attenuated.'" *Id.* (citing *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 216 (2007)). As a result, "courts are cautious about extending unjust enrichment liability beyond the principals to the transaction, and that when they do so, it is possible as a matter of equity to draw a clear line between the plaintiff's loss and the defendant's gain or misconduct." *Id.*

As a result, there must be "[s]ufficient proof that a party specifically and directly benefitted," which "requires more than a showing that the innocent party may have had access to, or some awareness of, the funds in question." *Id.* at 553; *see also id.* ("[O]n a theory of unjust enrichment, there must first be enrichment.") (citing *Indyk v. Habib Bank Ltd.*, 694 F.2d 54, 57 (2d Cir. 1982)).

Here, the allegations do not sufficiently plead a direct link between Plaintiff's alleged loss and any direct benefit to the non-municipal Defendants. There is no specific allegation that these

Defendants were directly enriched, *see Marini*, 12 F. Supp. 3d at 553, nor are there any factual allegations unique to the unjust enrichment claim, *see Velez v. Lasko Prods., LLC*, 706 F. Supp. 3d 444, 463 (S.D.N.Y. 2023) (concluding that the plaintiff "'makes no factual allegations unique to the unjust enrichment claim and fails to explain why the unjust enrichment claim is distinct from his other claims.'") (quoting *Fuller v. Stop & Shop Supermarket*, No. 22-cv-9824, 2023 WL 8005318, at *9 (S.D.N.Y. Nov. 17, 2023) (brackets, ellipsis, and citation omitted)).

As a result, Plaintiff's motion to amend as to his New York state law claims is denied in its entirety.

#### 5. 42 U.S.C. § 1983 – Fourteenth Amendment

The due process claims in the amended and original complaints are substantially similar. *Compare* Am. Compl. ¶¶ 268–75 *with* Compl. ¶¶ 69–76. Given that Plaintiff's motion for leave to amend the complaint is denied for all of the other proposed amendments and Plaintiff has neither specifically addressed amendment of this claim, nor has he identified any reason why that claim should be amended, the original complaint will remain the operative pleading. *See Huey v. Anavex Life Scis. Corp.*, 180 F.4th 56, 75 (2d Cir. 2026) (affirming a district court's denial of leave to amend where the plaintiff "did not provide any new information that would cure the deficiencies in her complaint" and "all additional proposed were substantially duplicative of existing allegations."); *see also Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend").

## III. CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS

The County and Neal move for judgment on the pleadings as to the single count in the original complaint alleging a violation of the Fourteenth Amendment Due Process Clause pursuant to 42 U.S.C. § 1983. *See generally* Dkt. No. 67-4.

### A. Procedural Background[7]

In March 2022, Plaintiff moved by order to show cause with a temporary restraining order in Albany County Court to vacate the default judgment of foreclosure the County obtained with respect to the property. *See* Dkt. No. 9-12. On June 27, 2022, the state court denied Plaintiff's motion to vacate the default judgment, *Matter of "In Rem" Delinquent Tax Lien Foreclosure*, 173 N.Y.S.3d 410 (Albany County Ct. 2022) (the Albany County decision); *see also* Dkt. No. 9-13. On July 29, 2022, Plaintiff appealed. *See* Dkt. No. 9-14.

On March 2, 2023, the Third Department issued an order noting that the appeal had been "deemed dismissed without further order" for Phoenix's failure to perfect the appeal. *See* Dkt. No. 9-15 (citing 22 N.Y.C.R.R. § 1251.10(a)). Plaintiff filed a motion to vacate the dismissal of and reinstate the state-court appeal in the Third Department on March 30, 2023. Dkt. No. 19-1. On May 11, 2023, the Third Department granted Plaintiff's motion to vacate dismissal of its appeal. Dkt. No. 19-2. After additional appellate litigation, on February 29, 2024, the Third Department affirmed the Albany County decision. Dkt. No. 34-2.

Meanwhile, on May 31, 2022, Plaintiff filed a complaint in federal court alleging due process violations arising from the tax foreclosure proceedings. *The Phoenix of Albany, LLC v.*

---

[7] The Court takes notice of extrinsic evidence that is integral to the complaint, *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), as well as judicial notice of documents in the public record including state court filings and decisions in the Albany County Court, Index No. 3088-12, RJI No. CC-16-00001, and the Appellate Division of the Supreme Court of the State of New York, Third Department, Appeal No. 535873. The Court "takes notice only of 'the fact of such litigation and related filings' and not 'for the truth of the matters asserted in the other litigation.'" *Herse v. Sheehan*, No. 24-cv-0065 (BKS/TWD), 2024 WL 5090695, at *3 n.1 (N.D.N.Y. Dec. 12, 2024) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)) (additional quotation omitted); *see also Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (explaining that "docket sheets are public records of which [a] court [can] take judicial notice"); *Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (concluding that a "state court decision" was a "public record" and therefore "appropriate for judicial notice") (summary order).

*The County of Albany, et al.*, No. 1:22-cv-00577 (LEK/ATB) (*Phoenix I*), Dkt. No. 1. On February 9, 2023, Senior United States District Judge Lawrence E. Kahn issued an order granting Plaintiff's cross-motion to amend that complaint. *Phoenix I* at Dkt. No. 45. Plaintiff failed to amend its complaint within the time allowed by Local Rule 15.1(c), and Judge Kahn dismissed the complaint on March 8, 2023, *id.* at Dkt. No. 47. Plaintiff filed this action on the same day that *Phoenix I* was dismissed, and there were no related matters pending in state court on that date.

On April 25, 2025, the Court denied Defendants' renewed motion to dismiss for lack of subject matter jurisdiction where Defendants argued that the state court decisions required application of the *Rooker-Feldman* doctrine. *See* Dkt. No. 39.

**B. Factual Background**

The original complaint alleges that the "Defendants' [the County and Neal] conduct in failing to provide [Plaintiff] with notice of the reinstated tax foreclosure proceeding, deprived [Plaintiff] of its Property without due process of law." Compl. ¶ 63. Plaintiff also alleges that Defendants did not follow New York law during the foreclosure process because they failed to (1) file certificates of reinstatement; (2) file "a new foreclosure petition for reinstating the parcels," (3) "publish and serve notice of the reinstated proceedings," and (4) "provide, at a minimum, a three-month redemption period following publication of the notice." *Id.* at ¶¶ 20, 21, 28, 30–31, 38. Plaintiff maintains that its "name and address were reasonably and easily ascertainable" from the recorded deed and litigation regarding taxes that had occurred in both state court and federal bankruptcy court. *Id.* at ¶ 46. In addition, Plaintiff alleges that its name and address were on the recorded property deed. *Id.* at ¶ 45. Finally, Plaintiff alleges that it "had no knowledge of the

reinstated tax foreclosure proceeding and therefore was unaware of its need to file an answer or other responsive pleading in the reinstated matter." *Id.* at ¶ 60.

### C. Legal Standard

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a Rule 12(c) motion, the same standard is applied as that applicable to a motion under Rule 12(b)(6), and "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Twombly*, 550 U.S. at 570).

"Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). A court will grant a motion for judgment on the pleadings "if, from the pleadings, the moving party is entitled to judgment as a matter of law." *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 340 (S.D.N.Y. 2008) (internal quotation and citation omitted). "On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).[8]

[8] This paragraph's discussion of the legal standard for a Rule 12(c) motion is taken from Judge Sannes' thorough discussion in *Waugaman v. City of Albany, New York*, No. 18-cv-194 (BKS/CFH), 2020 WL 564636, at *1 (N.D.N.Y. Feb. 5, 2020).

**D. Discussion**

In a brief argument, Defendants rely on the Albany County decision to argue that they are entitled to judgment on the pleadings. Specifically, they argue that the Albany County decision concluded that Plaintiff "took title subject to the recorded delinquent tax list and with constructive notice of the proceeding; and no new petition or mailing to [Plaintiff] was required before entry of the default judgment after reinstatement." Dkt. No. 67-4 at 39; *see also* Dkt. No. 67-2. They also point out that the Appellate Division, Third Department, affirmed the Albany County decision. *See* Dkt. No. 67-3. Plaintiff responds that the "operative claim remains whether Plaintiff received constitutionally adequate notice before being deprived of the Property" and that "[t]he record supplied by Defendants shows a disputed and procedurally complicated history . . . which is not the kind of record on which a court should resolve all factual and legal questions in Defendants' favor." Dkt. No. 85 at 32–33.

The Albany County decision rejected Phoenix's argument that the default judgment should be vacated because the County did not "comply with several provisions of the [Real Property Tax Law] regarding the reinstatement of withdrawn foreclosure proceedings." Dkt. No. 67-2 at 5. Specifically, Phoenix argued that the County "was required to (1) file the certificates of reinstatement of the proceeding against both the subject parcels with the County Clerk within days of issue," (citing N.Y. RPTL § 1137(4)(c)); (2) "file a petition of foreclosure to reinstate the foreclosure proceeding," (citing N.Y. RPTL § 1138(4)(d)); (3) "publish notice setting a redemption deadline at least three months following the date of the first publication of the notice," (citing N.Y. RPTL § 1124); and (4) "mail notice of the new foreclosure petition to Phoenix," (citing N.Y. RPTL § 1125). *Id.* at 6. After examining all of those arguments, the state court concluded that the County "was not required to file a second petition of foreclosure in order to reinstate the withdrawn foreclosure proceeding." *Id.* at 12.

Defendants have not carried their burden of persuasion that they are entitled to judgment on the pleadings at this stage of the litigation based on the Albany County decision, affirmed by the Third Department. In addition, Defendants limited their res judicata and collateral estoppel arguments to the portion of their brief addressing the motion to amend the complaint, and they did not make those arguments in support of their motion for judgment on the pleadings. Therefore, the Court denies the motion for judgment on the pleadings on this basis.

Defendants also argue that they are entitled to qualified immunity because there was no clearly established authority requiring notice under this exact factual posture. *See* Dkt. No. 67-4 at 39–40. Plaintiff responds that Defendants are not entitled to qualified immunity at this stage, because it is "not clear on the face of the pleadings." *Id.* at 33–34.

Defendants' cursory argument that they are entitled to qualified immunity at this early stage of the litigation is also not persuasive. As an initial matter, as a municipality, the County does not have immunity from "damages liability flowing from [its] [alleged] constitutional violations." *Owen v. City of Independence, Mo.*, 445 U.S. 622, 657 (1980); *see also Askins v. Doe No. I*, 727 F.3d 248, 254 (2d Cir. 2013) (holding that "extend[ing] the defense of qualified immunity to municipalities [would] contravene[e] the Supreme Court's holding in *Owen*[, 556 U.S. 622]").

Regarding Neal, "[b]ecause, on a Rule [ ] 12(c) motion, 'the facts supporting the qualified immunity defense must appear on the face of the complaint, asserting qualified immunity as a defense in the earliest stages of litigation, before development of a relevant factual record, usually fails to result in dismissal of the complaint.'" *Mitchell v. Annucci*, No. 20-cv-1407 (ECC/DJS), 2026 WL 807178, at *1 (N.D.N.Y. Mar. 24, 2026) (quoting *Pourkavoos v. Town of Avon*, 823 F. App'x 53, 59 (2d Cir. 2020) (summary order)). Defendants have not persuaded the Court as to how qualified immunity appears on the face of the complaint, and therefore, this argument fails.

Therefore, the Court denies Defendants' motion for judgment on the pleadings.[9]

## IV. REQUEST FOR SANCTIONS

Defendants seek Rule 11 sanctions against Plaintiff. *See* Dkt. No. 67-4 at 40–41. Plaintiff responds that the request for sanctions is procedurally deficient. *See* Dkt. No. 85 at 34. The Court agrees with Plaintiff; Defendants' request for Rule 11 sanctions is procedurally deficient under Rule 11's safe-harbor provision, and therefore the substance of the request cannot be considered.

Rule 11's safe harbor provision has strict requirements. "Courts in the Second Circuit are resoundingly clear that a failure to comply with these requirements is 'fatal' to a motion for sanctions under Rule 11." *Grecia v. Brass Lion Entm't*, No. 25 Civ. 1484, 2026 WL 540539, at *6 (S.D.N.Y. Jan. 2, 2026) (quoting *Adams v. Taylor*, 793 F. Supp. 3d 486, 489 (W.D.N.Y. 2025) ("Without a certificate of service or other evidence that Defendant complied with Rule 11(c)(2), the Court must deny Defendant's motion for sanctions.")). In fact, the Second Circuit has held that it is an abuse of discretion for an award of sanctions to be granted when the "explicit procedural requirements of Rule 11" were not satisfied. *Perpetual Secs., Inc. v. Tang*, 290 F.3d 132, 141–42 (2d Cir. 2002).

Defendants do not explain how they complied with the safe-harbor provision, and it appears that they have failed to comply with the strict requirements of Rule 11 at least two ways. First, Defendants do not appear to have served the motion for sanctions on Plaintiff at least 21 days before it was filed with the Court. *See* Fed. R. Civ. P. 11(c)(2)). Second, Defendants included

---

[9] The parties did not provide any briefing on whether and how the original complaint plausibly alleges liability against the County under *Monell*, however the Court seriously questions whether Plaintiff has sufficiently alleged such a claim in the original complaint. Accordingly, Plaintiff may file a written submission no longer than five pages by October 14, 2026, to be heard on why his claim against the County as asserted in the original complaint should not be dismissed. Defendants may file a response by October 21, 2026.

their request for sanctions within their motion for judgment on the pleadings. *See* Dkt. No. 67-4 at 32–33. "Under Rule 11(c)(2), a 'motion for sanctions must be made separately from any other motion[.]'" *Grecia*, 2026 WL 540539, at *8 ("finding 'no legal basis to support the[ ] argument' that a motion for sanctions under Rule 11 can be filed concurrently with another motion.") (quoting *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 52 (2d Cir. 2008)).

For these reasons, Defendants' request for sanctions is denied.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion to amend the complaint, Dkt. No. 59, is **DENIED**; and it is further

**ORDERED** that Defendants' cross-motion for judgment on the pleadings under Rule 12(c), Dkt. No. 67, is **DENIED**; and it is further

**ORDERED** that Defendants' motion for sanctions, Dkt. No. 67-4, is **DENIED,** and it is further

**ORDERED** that Plaintiff show cause by October 14, 2026 as to why his Fourteenth Amendment due process claim against the County, as asserted in the original complaint, should not be dismissed.

**IT IS SO ORDERED.**

Dated: September 30, 2026

Elizabeth C. Coombe
U.S. District Judge